WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Ann L., | No. CV-25-00098-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Jessica Ann L. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying her disability insurance benefits.  For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for an immediate award of benefits.

I.      BACKGROUND

A.      Factual Overview

Claimant was 39 years old on her alleged disability onset date of June 11, 2021. (Administrative Record ("AR") 206.)  She has at least a high school education and past relevant work as a bookkeeper prior to her alleged disability onset date, which is a skilled, sedentary job.  (AR 27.)  Claimant filed an application for disability insurance benefits under Title II on April 8, 2022.  (AR 15.)  The claim was initially denied on November 15, 2022, and upon reconsideration on March 11, 2023.  (*Id.*)  Claimant appeared via video at a hearing on January 25, 2024.  (*Id.*)  The ALJ denied Claimant's claim on February 27,

---

[1]      As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

2024.  (AR 28.)  The Appeals Council denied Claimant's request for review on November 19, 2024.  (AR 1.)  Claimant then appealed to this Court.  (Doc. 1.)

### B.      The SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that she "is under a disability."  42 U.S.C. § 423(a)(1)(E).  To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment."  *Id*. § 423(d)(1).  The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy.  *Id*. § 423(d)(2)(A).  The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a)(1).  The steps are followed in order, and each step is potentially dispositive.  *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity."  *Id*. § 404.1520(a)(4)(i).  "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit."  20 C.F.R. § 416.972(a)–(b).  If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments."  *Id.* § 404.1520(a)(4)(ii).  To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id.* § 404.1520(a)(4)(iii).  If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to

Step Four.  *Id.* §§ 404.1520(a)(4)(iii), (e).  The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record.  *Id.* § 404.1545(a)(1).  To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting."  *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work."  *Id.* §§ 404.1520(a)(4)(iv), (e).  "Past relevant work" is work the claimant has "done within the past five years, that was substantial gainful activity."  *Id.* § 404.1560(b)(1).  If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience.  *Id.* § 404.1520(a)(v).  If so, the ALJ will find the claimant not disabled.  *Id.*  If the claimant cannot make this adjustment, the ALJ will find the opposite.  *Id*

### C.    The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of June 11, 2021.  (AR 17.)

At Step Two, the ALJ determined that Claimant had severe impairments of Cervical degenerative disc disease with right sided radiculopathy, right carpal tunnel syndrome, gastroparesis, and irritable bowel syndrome.  (*Id.*)

At Step Three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404.  (AR 20.)  With respect to the mental impairments of anxiety, depression, and cannabis use disorder, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had no limitations in

(1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, or (4) adapting or managing oneself. (AR 18.)

The ALJ then found that Claimant had the following RFC:

[Claimant can] perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently balance as defined by the Selected Characteristics of Occupations, stoop, crouch, and kneel; occasionally crawl and climb ramps or stairs; and never climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead bilaterally. The claimant can frequently handle, finger, and feel with the right upper extremity. The claimant can have occasional exposure to dangerous moving machinery and unprotected heights. She requires a work site within 50 yards of a bathroom, but the need to use the restroom can be accommodated by normal breaks.

(AR 21.)

At Step Four, the ALJ found that Claimant was capable of performing past relevant work as a bookkeeper. (AR 27.) At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ found that Claimant could perform work as a bookkeeper as the work does not require the performance of work-related activities that are precluded by Claimant's RFC. (*Id.*) Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date through February 27, 2024. (AR 28.)

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.*

(quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.    DISCUSSION**

Claimant argues on appeal that the ALJ committed materially harmful error by rejecting Claimant's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Doc. 11 at 1.) If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject [her] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655 (citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). An ALJ, however, is "not required to believe every allegation

of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted).  "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id*.

In this case, Claimant challenges the ALJ's rejection of her symptom testimony concerning both her gastrointestinal conditions—including her gastroparesis and irritable bowel syndrome—and her cervical degenerative disc disease with right-sided radiculopathy.  As explained below, the ALJ erred in discounting certain gastrointestinal symptom testimony.  Furthermore, the credit-as-true rule applies, warranting a remand for an immediate award of benefits.  Accordingly, it is unnecessary to analyze Claimant's arguments concerning the ALJ's rejection of her symptom testimony about her cervical degenerative disc symptoms.

### A.    Gastrointestinal Symptom Testimony

Claimant testified extensively at the hearing about the challenges she faces due to her gastrointestinal conditions.  She testified that she suffers from abdominal pain, vomiting, and nausea on a daily basis and that there is "not one day that goes by that [she does] not feel sick."  (AR 49.)  The abdominal pain lasts for hours, is unpredictable, and feels like "really bad cramps . . . that won't go away," and she described the pain as akin to childbirth.  (AR 49–50.)  Claimant testified that she tries to alleviate the pain by going to the bathroom "as much as possible" and "basically sitting on the toilet."  (AR 50.)  She indicated that she goes to the bathroom on a typical day between 6 and 10 times, and up to 15 times on a bad day, and further testified that she might spend 15 minutes in the bathroom during each trip to try to make sure she has emptied her bowels to avoid having to run back to the bathroom again.  (AR 50–51).

Claimant further described her flareups, which occur usually once a month, as forcing her to spend most of her time "in bed from one to two weeks at a time" and "vomiting all the time when this happens."  (AR 41.)  She explained that she does not know why her flareups come to an end and has "to let [a flareup] take its course until it's over"; she does not really eat during  flareups and just takes "tiny sips of nutrition if [she] can"—

even if she might throw it up—to keep herself "from going to the hospital all the time." (AR 45–46.)  When she was in her prior employment as a bookkeeper, she was "always out of work all the time" due to her stomach issues.  (AR 45.)

She indicated that she has tried numerous treatments, and sometimes medications help and sometimes they do not.  (AR 41.)  She takes Gabapentin to help alleviate her stomach pain, (AR 42), promethazine for her nausea, (*id.*), and medical marijuana to help with her vomiting and nausea from her gastroparesis, and during her flare ups, (AR 44).

The ALJ included some limitations in the RFC based on Claimant's stomach issues—including limiting her to "light work with additional postural limitations" and "to account for any attacks or flares of symptoms . . . a bathroom within 50 yards of her work site," but dismissed the bulk of her symptom testimony.  (AR 24–25.)  Claimant presents several arguments for why the ALJ erred in rejecting her testimony.

She first takes issue with the ALJ's discussion of her medical marijuana use at Step 3 of the sequential analysis when the ALJ discussed whether Claimant met the paragraph B criteria.  Specifically, she argues that the ALJ's "belief that [Claimant] inhibited her own treatment with marijuana is incorrect" and "does not serve as a specific, clear, and convincing reason to reject [the] symptom testimony." (Doc. 11 at 10–11.)  This argument lacks merit.  The ALJ addressed Claimant's marijuana use when evaluating her cannabis use disorder's impact on her ability to perform mental work activities at Step 3.  (AR 19.)  The ALJ did not use Claimant's marijuana use as a basis for rejecting her symptom testimony.  Indeed, in the lengthy portion of the decision setting forth the reasons for discounting Claimant's stomach-related symptom testimony, the ALJ did not refer to Claimant's marijuana use at all.  (AR 24–25.)  Thus, the factual premise of Claimant's argument—that the ALJ relied on her marijuana use to discount her symptom testimony— is wrong, and her argument that the ALJ committed error fails.

Claimant's next argument—that the ALJ erred by "split[ting] the discussion of [Claimant's] testimony into two sections, with one discussion of [her] testimony about her gastroparesis symptoms, and the other about [her] cervical spine," (Doc. 11 at 11–12)—

also fails.  Claimant cites no authority for the proposition that an ALJ must mash up the analysis of various subjects of symptom testimony in a disorganized fashion, nor does any such precedent exist.  For good measure, Claimant throws in a conclusory argument that the ALJ cherry-picked normal findings within the record to support the discounting of the symptom testimony, but Claimant fails to make this argument with any specificity.  (*Id.* at 12.)  I therefore decline to consider this argument.  *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3 1155, 1161 n.2 (9th Cir. 2008) (declining to address a finding by an ALJ because the claimant "failed to argue this issue with any specificity in his briefing" (citation omitted)); *cf. Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." (quotation marks omitted)).

Claimant then challenges the ALJ's actual reasons for discounting Claimant's gastroparesis symptom testimony.  The ALJ disregarded her symptom testimony concerning the severity of her flareups based on her subjective report that her weight fluctuates up and down 10 pounds during flareups, (AR 1177), which the ALJ found unsupported based on (a) an evaluation of medical records showing that her weight fluctuated minimally over a period of more than a year, (*see* AR 24–25 (citing AR 1036 (114 lbs in June 2022), 1129 (116 lbs in January 2023), 1144 (110 lbs in May 2023), 1140 (108 lbs in October 2023)); (b) a gastroenterologist expert who noted that her weight was stable, (AR 25 (citing AR 1182 (noting "stable weights in the last 6months [sic]"), 1190 (same)); and (c) Claimant's own statements that her weight was stable, she was able to avoid hospitalization in the emergency room, and she denied unintentional weight loss, (AR 25 (citing AR 363 ("able to stay out of ED and maintain her weight"), 558 ("weight has been stable since [Botox injection] over the past 3 weeks"), 1097 ("no . . . unintentional weight loss"), 1199 ("*Denies* . . . weight loss")).  The ALJ provided specific, clear and convincing reasons for discounting Claimant's testimony of the severity of her flareups, and Claimant's suggestion to the contrary fails.

The ALJ next found that Claimant's testimony about the frequency and intensity of her symptoms of nausea, vomiting, and abdominal pain was contradicted by the medical record evidence, noting that (a) her testimony suggesting near constant abdominal pain and nausea was belied by examinations showing that her abdomen was not tender and that her medical providers noted her appearance as comfortable and not in distress, (AR 25 (citing AR 363, 373, 375, 1132, 1141, 1144, 1182, 1195–96, 1215)); (b) that imaging of her esophagus showed no corrosive changes that would be expected if her testimony that she vomited 6 to 15 times per day were true, her stomach imaging was normal, and although she suffered moderate diverticulosis, her mucosa appeared normal, as was a biopsy, (AR 25 (citing AR 301, 386, 393, 1193, 1196)); and (c) one doctor noted that her "delay in gastric emptying seems disproportionate to the severity of [her] symptoms," (AR 25 (citing AR 769)); and (d) her appearance at medical appointments as alert and oriented belied her reports of waking up to vomit regularly or at least suggested that such incidents did not negatively impact her, (AR 25 (citing AR 549, 1136)).

Like the ALJ's explanations for discounting Claimant's flareup testimony, the ALJ provided specific, clear and convincing reasons for discounting Claimant's testimony about the frequency and intensity of her vomiting, abdominal pain, and nausea. Claimant takes issue with the ALJ's quotation of Dr. Wei's comment that her symptoms were disproportionate to her rate of gastric emptying, arguing that this one comment, in isolation does not contradict her testimony. But as noted above, the ALJ provided multiple explanations why the medical records were inconsistent with her testimony. *See, e.g.*, *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases."). And Claimant's argument that the ALJ improperly played doctor fails because the ALJ referred to medical findings inconsistent with Claimant's testimony. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence . . . .").

Finally, the ALJ rejected Claimant's testimony about the severity of her irritable bowel syndrome symptoms, explaining that she "had soft stool over the years, but denied runny diarrhea," (AR 25 (citing AR 1195, 1198)), and reported "traveling by flying, which further suggest[s] fewer bathroom trips and less abdominal discomfort than alleged," (AR 25 (citing AR 1028)).  Claimant argues that these reasons for discounting her symptom testimony are not specific, clear, and convincing because neither the distinction between "soft stool" and "runny watery diarrhea," nor Claimant's travel by air for medical treatment have any bearing on Claimant's testimony that she spends significant amounts of time in the bathroom on normal days, and even more time in the bathroom when her condition is aggravated.  (Doc. 11 at 17–19.)  The Commissioner does not defend the ALJ's reliance on Claimant's different descriptions of her bowel movements, but does contend that the ALJ properly considered Claimant's travel from Arizona to California to reject her symptom testimony because such travel would involve "limited or no access to a bathroom."  (Doc. 13 at 10–11.)

The Commissioner's argument is unpersuasive, and the ALJ's reasons for discounting Claimant's symptom testimony concerning her irritable bowel syndrome are not specific, clear, or convincing.  First, whether Claimant's bowel movements are characterized as "soft" or "runny watery diarrhea" has no probative value as to her testimony that she regularly visits the bathroom 6 to 10 times a day—and up to 15 times when her condition is aggravated—and spends 15 minutes in the bathroom per visit.  Likewise, her travel by air is irrelevant.  Contrary to the Commissioner's assertion, airports and airplanes have restrooms available for use by passengers, and while they may not be accessible at all times, the ALJ and Commissioner's suggestion that Claimant should be unable to travel for medical treatment due to her symptoms is a stretch, to put it mildly.  Because the ALJ's decision to disregard Claimant's testimony about her irritable bowel syndrome symptoms is not supported by substantial evidence, reversal is warranted.

**B.     Remand for an Award of Benefits**

Ordinarily, if the Court reverses an ALJ, the Court remands for further proceedings.

*Garrison*, 759 F.3d at 1019.  Claimant requests that the Court apply the "credit-as-true rule," however, (Doc. 11 at 22–23; Doc. 14 at 7–8), which would result in the immediate award of benefits, as opposed to remand for further proceedings.  *Garrison*, 759 F.3d at 1019.  The credit-as-true rule only applies if (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citations omitted); (2) the "record has been fully developed," such that there are no "outstanding issues that must be resolved before a determination of disability can be made" and "further proceedings would not be useful," *id.* (citations omitted); and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (citation omitted).  The Ninth Circuit has described this result as appropriate "only in rare circumstances."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quotation marks omitted).  "The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."  *Revels*, 874 F.3d at 668 (cleaned up).

This is a rare case warranting application of the credit-as-true rule.  Here, the ALJ took testimony from Claimant concerning the significant amount of time she would need to spend in the bathroom every day due to her gastrointestinal conditions, (AR 49–51), failed to provide specific, clear, and convincing reasons to disregard that testimony, (AR 25), and obtained testimony from the vocational expert indicating that if Claimant's symptom testimony were taken as true—i.e., if she had to take breaks for "one or two hours" each day or had to visit the bathroom frequently such that she would "be off task 20 percent of every eight-hour workday"—she would not be able to find work, (AR 53–54).  The record has been fully developed, there are no outstanding issues to be resolved, and, taking Claimant's symptom testimony as true, the ALJ would have to award benefits.  Accordingly, remanding for further proceedings would serve no useful purpose.  *See, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (remanding for award of benefits where ALJ improperly rejected symptom testimony and vocational expert testified

that the claimant's pain and physical limitations would eliminate any potential employment); *Yang v. Astrue*, 281 Fed. Appx. 673, 674 (9th Cir. 2008) (rejecting Commissioner's argument for remand because the "VE's unambiguous conclusion that [the claimant's] own testimony demonstrate[d] an inability to perform jobs in the national economy" established "that the improperly rejected evidence, when credited, show[ed] that [the claimant] was disabled").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for an immediate award of benefits.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 31st day of March, 2026.

Honorable Sharad H. Desai
United States District Judge